Case 4:15-cv-03250   Document 11   Filed in TXSD on 08/03/16   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
August 04, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARSHA D. SOLANKI, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:15-CV-03250 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of the Social | § | |
| Security Administration, § | | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

Harsha D. Solanki filed this case under the Social Security Act, 42 U.S.C. § 405(g), for review of the Commissioner's final decision denying her request for social security benefits. The matter was referred to this magistrate judge by District Judge David Hittner. Dkt. 5. Solanki and the Commissioner moved for summary judgment. Dkt. 7, 9. After reviewing the record and the law, the Court recommends that Solanki's motion be denied, the Commissioner's motion be granted, and final judgment be entered affirming the Commissioner's final decision.

## BACKGROUND

Solanki filed claims for disability insurance benefits and supplemental security income on July 1, 2013, alleging disability beginning January 24, 2013, due to complications from bilateral knee replacements, high blood pressure, and high cholesterol. *See* Dkt. 4-6 at 2–4. Solanki's claim was denied on initial review.

1

Dkt. 4-5 at 2. On May 28, 2014, an administrative hearing was held at which Solanki, her son, and a vocational expert testified. On June 24, 2014, the administrative law judge (ALJ) rendered her decision finding Solanki not disabled. Dkt. 4-3 at 17–27. The Appeals Council denied Solanki's request for review. *Id.* at 2. Solanki then filed this action for review of the Commissioner's final decision.

## ANALYSIS

The standard of review in disability cases is governed by § 405(g) of the Social Security Act. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). The law and regulations governing the determination of disability are the same for both disability insurance benefits and supplemental security income. *Haywood v. Sullivan*, 888 F.2d 1463, 1467 (5th Cir. 1989). A federal court's review of the Commissioner's denial of social security benefits is limited to determining whether 1) the Commissioner applied the proper legal standard, and 2) the decision is supported by substantial evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 236 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The standard is "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). The Court does not reweigh the evidence, try the questions de novo, or substitute its own

judgment for that of the Commissioner, even if the Court believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272.

Solanki previously worked as a certified nursing assistant and was 56 years old when she underwent bilateral knee replacement surgery in January 2013. Dkt. 4-3 at 26; Dkt. 4-8 at 16. Medical records from follow-up visits indicated that Solanki was expected to return to work later that year, but recovery for her left knee was delayed. Dkt. 4-8 at 26, 28. An initial May 2013 examination by Dr. Robertson, Solanki's treating physician, revealed an orthopedic condition that allowed Solanki to receive a handicap parking placard. Dkt. 4-3 at 24.

In July 2013, a reviewing examiner opined that Solanki could perform medium work and did not meet the twelve-month durational requirement. Dkt. 4-4 at 3–7. Ten months later, Solanki sought out Dr. Robertson again with more complaints of knee pain. Dkt. 4-8 at 37–39. During this May 2014 exam, Dr. Robertson noted some swelling over the anserine bursa area on the knee, but a neurological examination showed no motor dysfunction. *Id*. Dr. Robertson again noted Solanki's need for a handicap parking placard and referred Solanki to an orthopedist, though Solanki never followed up with the referral. *See id.* at 38. Solanki testified that during her recovery she was able to perform daily activities and chores, but that she could not stand up or walk for long periods of time due to the pain and swelling in her leg. Dkt. 4-3 at 23–25, 40.

The ALJ followed the usual five-step sequential analysis in reaching her decision.[1] The claimant bears the burden of proof on the first four steps of the analysis. *Greenspan*, 38 F.3d at 236. Once this initial burden is satisfied, the Commissioner bears the burden of proof on the last step. *Id*. After considering the record, the ALJ made the following findings:

(1) Solanki has not engaged in substantial gainful activity since January 24, 2013, the alleged onset date.

(2) Solanki has the following severe impairments: post bilateral knee replacement and hypertension.

(3) Solanki does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404.1520(d).

(4) Solanki has residual functional capacity (RFC) to perform a full range of light work, but is unable to perform any past relevant work.

(5) Solanki has acquired work skills from past relevant work that are transferrable to other jobs in the national and regional economies.

Dkt. 4-3 at 20–27. The ALJ concluded her analysis at step five after considering the vocational expert's testimony. She also took into consideration Solanki's medical history, RFC, age, and past relevant work experience. The ALJ ultimately determined that Solanki was not disabled under the Act. *Id.* at 26.

---

[1] (1) Is the claimant currently engaged in substantial gainful activity, *i.e.*, working? If the answer is no, (2) does the claimant have a severe impairment? If so, (3) does the severe impairment meet or equal one of the impairments listed in Appendix 1 of 20 C.F.R. § 404.1520(d)? If no, (4) can the claimant still perform her past relevant work? If no, (5) considering the claimant's residual functional capacity (RFC), age, education, and work experience, is there any other work she can do? If so, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.

In her motion for summary judgment, Solanki contends that the ALJ's determination that Solanki could perform the full range of light work is unsupported by the medical evidence in the record. Dkt. 7 at 6. In support of her claim, she asserts that the issuance and renewal of her handicap parking placard by the Texas Department of Motor Vehicles conclusively demonstrates that the ALJ's RFC assessment is not supported by substantial evidence.

Solanki reasons that because handicap placards are reserved by statute to those unable to walk 200 feet without stopping to rest or for those confined to a wheelchair, the "[i]ssuance of such a placard is indicative of sedentary or less than sedentary ability." *Id.* at 7. However, the Texas Department of Motor Vehicles is an entirely separate government entity from the Social Security Administration and does not use the same criteria in issuing parking placards as the ALJ uses in evaluating RFC. *Compare* TEX. TRANSP. CODE § 681.003(c) *with* 20 C.F.R. § 404.1545.

To obtain a handicap parking placard in Texas, the applicant must provide a written prescription from a physician "certifying and providing evidence acceptable to the department that the person making the application . . . has a mobility problem that substantially impairs the person's ability to ambulate." TEX. TRANSP. CODE § 681.003(c). The placard is renewed on request without presentation of evidence of eligibility. § 681.004(c)(2). The social security

regulations, on the other hand, set forth specific physical exertion requirements in determining capacity for work. Light work, for example, "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . [and] requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b). The ALJ's RFC determination is "based on all of the relevant medical and other evidence," which would include the applicant's complete medical history, any opinions from treating and consulting physicians, and the applicant's own testimony concerning her pain, limitations, and daily activities. § 404.1545(a)(3)–(4).

Solanki is correct that handicap parking placards are statutorily reserved for people who are unable to walk 200 feet without stopping to rest or for those confined to a wheelchair. *See* TEX. TRANS. CODE § 681.001(5)(A)–(C); Dkt. 7 at 7. Yet the record does not establish that she received a placard for either of these reasons. Instead, Dr. Robertson's treatment notes state that Solanki suffers from an "orthopedic condition" that qualifies her for a placard. *See* Dkt. 4-8 at 33. Such a condition qualifies an applicant for a placard if the condition "severely limited" the applicant's ability to walk. TEX. TRANS. CODE § 681.001(5)(G). The code does not define "severely limited," nor does it indicate what type of evidence of disability is accepted by the department. Thus the issuance of a placard is not in any way indicative of Solanki's specific physical exertion limitations under § 404.1567.

Solanki asserts that "[l]ight work requires far greater ability" than that of a handicap placard recipient, but cites no legal authority for this general proposition and points to no other evidence in the record demonstrating that she was limited to sedentary work or less under § 404.1567(b). Dr. Robertson's treatment notes merely state in a conclusory fashion that Solanki suffers from an "orthopedic condition requiring [a] parking placard." *See* Dkt. 4-8 at 33, 35, 40. Absent from the record is any objective evidence demonstrating how the orthopedic condition prevented Solanki from meeting the lifting, walking, and standing limitations of light work as defined by the regulations. At most, the issuance of a handicap parking placard comprises only a small part of the entire medical record to be considered by the ALJ under § 404.1545.

In determining Solanki's RFC, the ALJ discussed Solanki's subjective complaints of pain and other symptoms, which were presented through her testimony as well as Dr. Robertson's treatment notes. *See* Dkt. 4-3 at 23–24. The ALJ questioned the credibility of Solanki's statements concerning the severity of her symptoms, noting that Dr. Robertson reported normal reflexes and no motor dysfunction, and Solanki continued to perform "significant and numerous activities of daily living." *See id.* at 25. The ALJ also highlighted that Solanki's visits to Dr. Robertson were sporadic, noting that the infrequency of treatment conflicted with Solanki's description of the intense, debilitating pain she allegedly suffered. *Id.*

Solanki complains that the ALJ improperly considered her ability to perform daily activities when evaluating her capacity for work. Dkt. 7 at 6. This argument is without merit. The regulations specifically direct the ALJ to consider factors such as daily activities, use of medication, and frequency of treatment received in determining the extent to which symptoms affect the applicant's capacity for work. *See* 20 C.F.R. § 404.1529(c). The ALJ appropriately weighed these factors in her decision.

Therefore, the ALJ did not commit reversible error in making her credibility determination and assessing Solanki's RFC.

## **CONCLUSION**

The Commissioner's decision is supported by substantial evidence and is based on a proper application of the law. The Court recommends Solanki's motion for summary judgment be denied, the Commissioner's motion be granted, and final judgment be entered affirming the denial of benefits.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. Failure to file timely objections precludes appellate review of factual findings or legal conclusions, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72.

Signed at Houston, Texas, on August 3, 2016.

*Stephen Wm Smith*
Stephen Wm Smith
United States Magistrate Judge